### P. LORILLARD CO. v. PEPER.

(Circuit Court, E. D. Missouri, E. D. February 5, 1895.)

No. 3,672.

ASSIGNMENT—SUFFICIENCY OF EVIDENCE.

> In a suit by P. Lorillard Co., incorporated in 1891, for an infringement commencing in 1886, of a trade-mark of P. Lorillard & Co., the allegation in the bill of the sale and transfer to complainant by P. Lorillard & Co. of its business, including right to sue for past infringements of trade-marks, being traversed by the answer, is not established by testimony of a witness that he had been connected with the business of complainant and its "predecessor" for over 20 years.

Suit by P. Lorillard Co. against Christian Peper for infringement of trade-mark.

Phillipp, Munson & Phelps, for complainant.
Smith P. Galt, for defendant.

PRIEST, District Judge. Since 1886 the defendant has used, among a multitude of other designs for the product of his tobacco factory, one called "Peper's True Smoke." It is contended by the complainant that the style of lettering and dress of this package constitutes an infringement upon a similar package of smoking tobacco put up by it and its predecessor since 1871, called "P. Lorillard & Company's Tuberose." The evidence shows the tuberose package was devised and adopted as early as 1871 by P. Lorillard & Co., and by that firm was continuously used down to July, 1891. Who constituted the firm of P. Lorillard & Co. is not disclosed by the evidence. The complainant was organized as a corporation under the laws of New Jersey in 1891, and began business in July of that year. The record shows that its capital stock is $5,000,000, divided into 50,000 shares, of which Pierre Lorillard, Jr., subscribed 49,997, and George D. Finley, Ethan Allen, and William Brankerhoff, one each; and that the objects for which the corporation was formed were "to manufacture, buy, sell, and deal in tobacco, cigarettes, cigars, and snuff, and all materials, rights, privileges, patents, trade-marks, and other property of every description, commonly or conveniently used, manufactured of, or sold in connection therewith, or necessary or convenient in and about the transaction of the said business of said company." There is no intimation in the articles of incorporation that this company was to succeed to any business already established, but, on the contrary, so far as appears from the record, it was to engage in an original business undertaking. The bill, however, avers:

"That on or about the 1st day of July, 1891, the said business [that is, the business of P. Lorillard & Co.], the manufacturing plant and good will thereof, and all the trade-marks pertaining to said business, and each and every detail and part thereof, were sold and transferred to your orator, together with the full right, title, and interest in and to any and all damages and profits which your orator's predecessor in business was, or might be, or has been, entitled to sue for and recover by reason of any and all violations or infringements of said trade-marks or any of them. Thereupon your orator succeeded to the said business, good will, and trade-marks, and became, and has since continued to be, and now is, the sole owner thereof, and solely entitled to have, hold, use, enjoy, and apply the same."

This averment of the bill is traversed by the answer. There is no direct proof of this averment of the bill, but complainant insists that there is proof inferential and indirect sufficient to sustain this averment. For instance, the witness Allen was asked (C. R. p. 24):

"How long have you been connected with the business conducted by said complainant corporation and their predecessors, and in what capacity? A. Since 1867. Q. To what degree have you had the responsibility of the selling department of this business from 1867 to the present time? A. Well, from the time of my entering the employ of the concern, in 1867, to the fall of 1868, I was employed as an assistant in the salesroom; from the fall of 1868, as manager of the New York salesroom, and of the goods sold by the house to the New York City trade and customers visiting the salesroom; since 1885, as manager in chief of the selling department. Q. To what extent have your duties in these capacities caused you to become familiar with the general state of the tobacco trade in the United States? A. It brought me to a large extent in connection with the tobacco trade of the United States."

We do not think this testimony establishes the controverted fact of the succession of the complainant to the business of the firm of P. Lorillard & Co. Taking the context, these inquiries do not appear to have been directed to any such purpose. If the evidence had been so intended, it certainly would have been objectionable.

As to who is a "predecessor," within a legal signification of that word, is a question of law and fact, which no witness is competent to determine. One may be a predecessor of another without the relation of contractual succession. For instance, P. Lorillard & Co. might have occupied a building for the purpose of manufacturing tobacco, and have gone out of the business entirely, and the complainant may have established a new business in the same building, and the former partnership be denominated, and be, in the opinion of the witness, a "predecessor." "Predecessor," in the common acceptation, means "one who goes before or precedes another in a given state, position, or office," and does not necessarily express any relation of legal privity. There is no evidence in the record that P. Lorillard & Co. sold, assigned, or transferred their business of manufacturing tobacco or trade-marks to the complainant in this case. If they did, the fact is susceptible of direct and unequivocal proof; and the complainant having failed to furnish it, and relying merely upon incidental and accidental expressions of witnesses, it will be presumed that the fact averred in the bill is not true; and for this reason the bill will be dismissed, at complainant's cost.